# Wytheville.

## SUTTON V. VIRGINIA RAILWAY AND POWER COMPANY.

### June 12, 1919.

1. STREET RAILWAYS—*Suburban Railroad—Rights Between Street Railway Cars and Automobiles—Meeting at Crossing—Speed of Vehicles.*—The rights of use of a public highway in a suburban section by a street railway car and an automobile, the street railway company not owning its right of way, are equal, where there is no statute or ordinance regulating the speed of either at a crossing. Their duty towards each other in the matter of speed is fixed by the rule at common law. That rule is that their speed must be reasonable under all the facts and circumstances surrounding the respective parties. Such rule imposes upon both parties the duty to have their vehicles under such control as they approach a crossing that either can stop before reaching the crossing, if to so stop should become necessary to avoid a collision between them upon the crossing or a situation likely to result in such collision.

2. STREET RAILWAYS—*Suburban Railroad—Rights Between Street Railway Cars and Automobiles—Meeting at Crossing—Speed of Vehicles—Duty of Prevision.*—In the instant case the duty of prevision or forethought as to the possibility of a collision rested upon both equally, in view of the facts as to the location of the crossing and the frequency of the passage of street cars and automobiles over it that might be reasonably expected to occur in view of the accustomed frequency of such use as known to the respective parties.

3. STREET RAILWAYS—*Suburban Railroad—Rights Between Street Railway Cars and Automobiles—Meeting at Crossing—Speed of Vehicles—Case at Bar.*—The instant case was not a case of the use of the crowded streets of a city, nor of an infrequently used highway, but of a highway, and of a fixed crossing place on the highway of a street railway thereon, more or less frequently used by the latter and by travelers in automobiles. These circumstances could not justify either the defendant street railway company or the plaintiff, driving an automobile, in approaching such crossing so nearly and in such manner that they were powerless to stop short of the

57

crossing whatever might be the situation they might find confronting them thereat. Such conduct would not be within the exercise of equal rights of travel. It could be justified only by an exclusive right of way. In the absence of such exclusive right such action constituted reckless conduct not "consistent with ordinary prudence." Such conduct is negligence *per se,* and, in the instant case, both plaintiff and defendant were guilty of such negligence, and that negligence was the proximate and concurring cause of the accident.

4. STREET RAILWAYS—*Suburban Railroad—Rights Between Street Railway Cars and Automobiles—Meeting at Crossing—Speed of Vehicles—Case at Bar.*—The instant case did not involve the doctrine of "stop, look, and listen" before crossing a railroad. If the plaintiff had had his automobile under such control as he turned to go over the crossing that he could have stopped before going upon it had the exigency which confronted him seemed to a reasonable man to require, and had the situation there been such with respect to the distance away of the street car and of its apparent speed that a reasonable man under all the circumstances would have regarded it as prudent to go upon the crossing, and if the plaintiff had thereupon and for those reasons gone upon the crossing, and acted with reasonable alertness to observe and to become aware of the conditions actually confronting him, although he may not have previously stopped, or looked, or listened, such conduct would not have been negligence *per se,* but the question of negligence would have been one of fact for the jury.

5. STREET RAILWAYS—*Suburban Railroad—Rights Between Street Railway Cars and automobiles—Meeting at Crossing—Speed of Vehicles—Case at Bar.*—But for the plaintiff to voluntarily so previously act as to deprive himself, or at least to think that he had deprived himself, of the power to control his own movement at the moment of going upon a street railway crossing, so that he was powerless to exercise any volition in the matter, so that he was in that way carried upon the crossing, was for him to be guilty of reckless disregard of the dictates of ordinary care and prudence. It was not a case of lack of care to ascertain existing conditions, so that they may serve as a guide to voluntary action, which is involved in the "stop, look, and listen" doctrine, but an abandonment of the power of exercise of voluntary action.

6. STREET RAILWAYS—*Crossings—Contributory Negligence — Acts 1916, Ch. 444, Modifying the Common-Law Rule—Last Clear Chance.*—The instant case was one of concurrent negligence under the common-law rule on the subject, where the contributory negligence of the plaintiff continued as a contributing proximate cause of the accident up to its occurrence. The

facts of the case leave no room for the interposition of the doctrine of the last clear chance,, so as to relieve the plaintiff of the consequences of his own negligence. And the recent statute in Virginia (Acts 1916, p. 762 ;4 Pollard's Code, p. 1207) which modifies the common-law rule as to the effect of contributory negligence does not apply.

Error to a judgment of the Circuit Court of Henrico county in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action by the plaintiff in error to recover damages for certain personal injuries. He was plaintiff in the court below and the defendant in error was the defendant there. They will be hereinafter referred to as plaintiff and defendant.

The defendant demurred to the evidence in the trial court and the jury returned a verdict in favor of the plaintiff, subject to the ruling of the court upon the demurrer. That court sustained the demurrer and entered judgment dismissing the proceeding, with costs against the plaintiff.

## THE MATERIAL FACTS.

Under the statutory rule applicable in such case, the material facts as shown by the record may be stated as follows:

On the night of May 28, 1917, between eight and nine o'clock P. M., the plaintiff's automobile was run into and struck by a car operated by the defendant company. The automobile was completely demolished and the plaintiff severely injured about the head and body. The accident happened in the county of Henrico, on the Hermitage road, about 300 yards north of the corporate limits of the city of Richmond, at a crossing constructed over the tracks of

the defendant's company for the use of persons crossing at that point. The plaintiff was approaching the crossing which turned sharply to the. right and leads into a road which goes to his home. At that point the Hermitage road is 100 feet wide. It is a county road. The car track runs down the middle of the road. On the Hermitage road there is a tree where one would turn to cross the tracks at this crossing. The plaintiff turned a little to the left of the road so as to avoid that tree, and then turned and started across the track. He was within several feet of the track when he first heard the car coming. There are trees with long branches on either side of the track which partially obstructed the view of the track in the direction from which the street car was approaching. There was no whistle blown and no bell rung, the bright lights on the plaintiff's automobile were burning and threw a glare across the track which the motorman says he saw as the plaintiff began to turn for the crossing. The street car was then 150 to 200 feet from the point of accident. It was at the same instant that the plaintiff first saw the street car and he saw and realized that it was coming "very rapidly," though he did not then know at what speed it was coming. It was in fact coming at a rate of speed of about thirty-five miles an hour, as shown by the evidence on the trial, and it was, as also shown by such evidence, a physical impossibility for it to have been stopped before reaching the crossing. When the plaintiff first saw the street car he did not think he could stop his automobile in time to prevent stopping on the car tracks, so he threw on all power that he thought the car would stand without stalling, trying to get out of the way. In this emergency and in order to give the street car as much clearance and get as much clearance for his automobile as possible, he took a slight diagonal course, and in doing so struck a tree a few feet just below the crossing which blocked the automobile with its rear wheels still on

the track at the crossing, and it was in this position when struck by the street car. After plaintiff was stalled on the track he says he holloed several times lustily. The street car at that time was ninety-one feet away. The car came on without slackening its speed—at a "terrific speed," as testified by the plaintiff. The car struck his automobile a terrific blow, and after striking it carried it, by actual measurement, 137 feet, knocking it against two or three trees as it was carried along. At the point where the accident occurred the Hermitage road slopes down from either direction. The car tracks are laid in the middle of the public road and the rails and ties are some distance above the roadbed, and there is a drain on either side, except at the crossing. The car tracks are so far above the roadbed that one in an automobile can only cross at the crossing. The public highway at this point is on both sides of the car tracks, the track being laid in the county roadbed, as aforesaid. On the right-hand side when going north is a clay roadbed, and, while traveled to some extent in dry weather, is not much used in bad weather. On the night of the accident, there had been a terrific rain, and the clay roadbed on the right-hand side was not in good condition for traveling. The crossing constructed over the railway tracks is rough; that is to say, it is so rough that an automobile would have to go across it slowly or the occupant would be jostled considerably. The plaintiff had slackened speed of his automobile to six miles per hour and was proceeding across at this rate. But even on demurrer to evidence we must regard the fact to have been that the plaintiff could not have stopped his automobile short of the crossing after he saw the street car approaching; or at least that he acted upon that assumption.

There was certain evidence excluded by the trial court which, if admitted, would have shown that the defendant did not own its right of way along the county road afore-

said, but used it by permission of the local authorities un-
der the statute in such case made and provided. The case is
considered by us as if such evidence had been admitted.

There was no statute or ordinance regulating the speed of
the street cars along the public road aforesaid or at cross-
ings thereof; but there was an ordinance or resolution of
said local authorities limiting the speed of automobiles on
said road to fifteen miles per hour—no mention being made,
however, of the speed at crossings.

*Gunn & Mathews*, for the plaintiff in error.

*T. J. Moore, A. B. Guigon* and *E. R. Williams*, for the de-
fendant in error.

SIMS, J., after making the foregoing statement, delivered
the following opinion of the court:

[1, 2]   The facts present a case of the use of a public
highway in a suburban section by a street railway car and
by a traveler in an automobile, the former not owning its
right of way, so that their rights of travel were equal. There
was no statute or ordinance regulating the speed of either
at the crossing, the point where the collision between them
occurred. Their duty towards each other in the matter of
speed was fixed by the rule at common law. That rule is
that their speed should have been reasonable under all the
facts and circumstances surrounding the respective par-
ties. Such rule imposed upon both parties the duty to have
their vehicles under such control as they approached the
crossing in question that either could stop before reaching
the crossing, if to so stop should become necessary to avoid
a collision between them upon the crossing or a situation
likely to result in such collision. And the duty of prevision
or forethought as to the possibility of such a contingency

arising rested upon both equally, in the light of the facts as to the location of the crossing and the frequency of the passage of street cars and of automobiles over it that might be reasonably expected to occur in view of the accustomed frequency of such use as known to the respective parties.

[3] This is not a case of the use of the crowded streets of a city, nor of an infrequently used highway; but of a highway and of a fixed crossing place on the highway of a street railway thereon, more or less frequently used by the latter and by travelers in automobiles; but these circumstances could not justify either the defendant street railway company or the plaintiff in approaching such crossing so nearly and in such manner that they were powerless to stop short of the crossing whatever might be the situation they might find confronting them thereat. Such conduct would not be within the exercise of equal rights of travel. It could be justified only by an exclusive right of way. In the absence of such exclusive right such action constituted reckless conduct not "consistent with ordinary prudence." The minds of reasonable men will not differ on that proposition. Such conduct, therefore, is negligence *per se,* and, as appears from the statement of facts preceding this opinion, both plaintiff and defendant were guilty of such negligence, and that negligence was the proximate and concurring cause of the accident.

[4, 5] This case does not involve the doctrine of the duty of a traveler "to stop, look and listen" before crossing a railroad. If it were conceded that such duty did not rest upon the plaintiff in the instant case, since he had equal rights of travel over and across the highway in question with the defendant street railway company to operate its street car along such highway; and if the plaintiff had had his automobile under such control as he turned to go over the crossing that he could have stopped before going upon it had the exigency which confronted him seemed to a rea-

sonable man to require it, and had the situation there been, such with respect to the distance away of the street car and of its apparent speed that a reasonable man under all the circumstances would have regarded it as prudent to go upon the crossing, and if the plaintiff had thereupon and for those reasons gone upon the crossing, and acting with reasonable alertness to observe and to become aware of the conditions actually confronting him, although he may not have previously stopped, or looked or listened, such conduct would not have been negligence *per se*, but a question of fact for the jury   But for the plaintiff to voluntarily so previously act as to deprive himself, or at least to think that he had deprived himself, of the power to control his own movement at the moment of going upon a street railway crossing, so that he was powerless to exercise any volition in the matter—so that he was in that way carried upon the crossing—was for him to be guilty of reckless disregard of the dictates of ordinary care and prudence   It is a case of one's voluntary abdication of self-control previously to entering into a situation where the retention of such control would be the constant care of every reasonably prudent person.   It is not a case of lack of care to ascertain existing conditions so that they may serve as a guide to voluntary action, which is involved in the "stop, look and listen" doctrine; but an abandonment of the power of exercise of voluntary action.

The case in judgment is unique in its feature of fact aforesaid, which distinguishes it from the cases in the books involving the "stop, look and listen" doctrine; it becomes unnecessary, therefore, for us to enter upon any discussion of the Virginia cases involving that doctrine, a number of which are cited and relied on by the plaintiff.

[6]   The case before us is one of concurrent negligence under the common law rule on the subject, and where the contributory negligence of the plaintiff continued as a con-

tributing proximate cause of the accident up to its occurrence. The facts of the case leave no room for the interposition of the doctrine of the last clear chance, so as to relieve the plaintiff of the consequences of his own negligence. And the recent statute in Virginia (Acts 1916, p. 762, 4 Pollard's Code, p. 1207), which modifies the common law rule aforesaid as to the effect of contributory negligence, does not apply to such case as that before us. We are, therefore, of opinion that there was no error in the judgment under review, and it must be affirmed.

*Affirmed.*